LYDIA EMERY, by her next friend, appellant, and ANDREW G. VAN SYCKEL, respondent.

1. The testator, in 1846, devised his farm to his daughter, Lydia, wife of N. E., during her natural life, and after her death, to her children, subject to certain charges, and also, if she should be dispossessed of the farm in any way or manner whatever, that his executors should take charge of her estate, and rent out the land to the best advantage, and pay over to her the rents and interest money yearly, and her receipt, and hers only, should be sufficient for the same. *Held*, that there was a legal estate in the wife, limited upon the contingency of dispossession, subject to the marital rights of the husband till then, but when that occurred, a trust estate began in the executors for the rest of the life of the wife, to her sole and separate use.

2. The husband alone obtained letters testamentary. Judgments were recovered against him by his creditors, and his interest in the farm was sold by the sheriff to Van Syckel; the court enjoined Van Syckel from proceeding in ejectment to recover possession, upon the ground that the dispossession, in equity, occurred at the delivery of the deed to Van Syckel, and that from that time N. E., the husband, was in possession, as trustee for the sole and separate use of the wife.

On the 4th of February, 1863, the Chancellor made a decree in the above stated cause, whereby it was ordered that the injunction theretofore issued, restraining proceedings at law, should be dissolved, and that the complainant's bill of complaint be dismissed, with costs; and that upon service upon the complainant, of a copy of this decree, and of the taxed bill of costs of the said defendant, Andrew G. Van Syckel, and upon demand and non-payment of the said costs, the said defendant be at liberty to apply for execution therefor, according to the practice of this court. From that decree the complainant has appealed.

*Mr. Bird* and *Mr. G. A. Allen*, for appellant.

*Mr. Van Fleet* and *Mr. Van Syckel*, for respondents.

The opinion of the court was delivered by

BEDLE, J.   The object of this bill is to restrain the defendant, Van Syckel, from proceeding in an action of ejectment,

now pending in the Supreme Court, to recover possession of a farm, and wood lot adjoining, devised to the complainant by George Apgar, her father, by his will, dated June 27th, 1846.

The testator died in 1846, leaving, him surviving, his widow, Rhuhamah, and the complainant, Lydia, the wife of Nicholas Emery, who is his only child. In the year 1861, four several judgments were recovered at law against Nicholas Emery by his creditors, one of which was assigned to Van Syckel, and another was recovered in his own name. Upon these judgments executions were issued, and by virtue thereof the right, title, interest, and estate of Nicholas Emery, in the lands so devised, were levied on and sold by the sheriff of Hunterdon county, to the defendant, Van Syckel, for the sum of seventeen dollars, a deed for which was made to him by the sheriff on the 16th day of June, 1862, and on the next day, the seventeenth day of June, the action of ejectment was commenced against Nicholas Emery, to recover possession of the lands. The widow and Lydia Emery were admitted as defendants in that action, by rule of the court. The general ground of relief claimed is, that, by the will, there is a separate equitable estate in the wife that cannot be reached by the creditors of the husband, and which it is the duty of a court of equity to protect. The will is very unskillfully drawn, and its construction is not without embarrassment. The intention of the testator, so far as it may be gathered from the will, should govern, unless it violates some rule of law. A particular reference to the will, is necessary to an understanding of the question involved.

The testator first provides for his widow, by giving her an annuity of sixty dollars during her natural life, to be paid to her by his executors, provided she remains his widow, and directs his executors to place $1000 at interest as a fund for its payment, the principal, with the interest remaining at the death or marriage of the widow, to become a part of the residue of his estate. He also gave to her the use and occupation of one-third of the dwelling-house and kitchen

during her natural life, provided she remained his widow. He next directed that his son-in-law, Nicholas Emery, and his daughter, Lydia, should "provide her with board during the same period, and with fire wood from off the farm, cut short for her fire-place or stove, if she desires it, free of all and every expense to her." He then gave her one-third of all the stock, and one-third of all the household and kitchen furniture, and a cupboard and contents, and further provided, "if, at any time, she should think proper to give up her part of the dwelling-house and kitchen, and take her board elsewhere, it is then my will, that my executors shall pay annually, out of my estate, the expense of her board and lodging. And I do hereby make my real estate liable therefor, so long as she remains my widow, and no longer. The aforesaid bequests are made in lieu of dower out of my estate."

The next bequest is to George Servis Emery, a grandson of testator, and a child of Lydia, of one thousand dollars, to be paid to him at the age of twenty-five years, and this is given, over and above his equal share in all the rest and residue of the estate; if he should die before attaining that age, the said legacy to become a part of the residue of the estate.

The will then gives to Lydia, all the testator's books, and the remaining two-thirds of the household and kitchen furniture, and live stock, and proceeds in the language following: "*I also give and bequeath to my daughter, Lydia, for and during the term of her natural life, my farm, on which I now reside, containing two hundred and sixty-eight acres, more or less, with the wood lot adjoining, together with all the rest and residue of my estate, both real and personal, and after her death, I do give, devise, and bequeath the same to her children, to be equally divided among them, share and share alike, when her youngest child shall attain the age of twenty-one years*," subject, nevertheless, to the payment of the annuity of sixty dollars bequeathed to my wife, Rhuhamah, and also the payment of the one thousand dollars bequeathed to my grandson, George Servis Emery; and for the sure and certain payment of the said bequest, I do hereby charge and

make liable the real estate bequeathed to my daughter, Lydia, and her children, for the payment thereof; should any of my grandchildren die before the youngest child shall attain the age of twenty-one years, and without lawful issue, it is my will that such share or shares shall descend to, and be divided equally among, the survivors, share and share alike. If my daughter, Lydia, should die before the youngest child attains the age of twenty-one years, it is then my will that her husband shall have the use, occupation, and profits of my estate, until the said youngest child of my daughter, Lydia, shall attain the age of twenty-one years, as aforesaid. I do order and direct my executors to have the farm and buildings kept in good repair, and to see that no unnecessary waste or destruction of timber be committed on my said farm, or wood lot adjoining, and to carry this my last will and testament into effect, according to the true intent and meaning thereof. Fifth. It is my will, that if my daughter, Lydia, should be dispossessed of the farm in any way or manner whatever, in her lifetime, then I do order and direct my executors, or the survivor of them, to take charge of her estate, both real and personal, and rent out the land to the best advantage, and pay over to her the rents and interest money yearly, and every year, *and her receipt, and hers only, shall be sufficient for the same.*"

The testator then gives to a black girl her freedom, a bed, bedding, chest, and one cow; also the sum of twenty-four dollars a year, so long as she will support herself without the assistance of that sum and no longer, to be paid to her yearly by his executors; and adds, " and for the certain payment thereof, my real estate is hereby charged and made liable."

The executors named in the will are Nicholas Emery, the son-in-law, and William Alpaugh. Alpaugh, it appears by the answer, has not taken upon himself any part of the administration of the estate, and letters testamentary were granted to Nicholas Emery alone.

What kind of an estate did the complainant take under that

will? Van Syckel, in his answer, sets up that Lydia took a life estate in the lands, which, by virtue of the marital relation, vested in the husband as a freehold estate, (the marriage having taken place, and the estate having been acquired previous to the act of 1852, for the better securing the property of married women). This view rests upon the language of the devise, without regard to the subsequent provisions. By itself, it would undoubtedly create a legal estate in the wife for her life, that would, by force of the marriage relation, become a freehold estate in the husband. But that general language is subject to the limitation contained in the fifth clause of the will.

The testator had but the one child; she was married when he made the will. He did not intend to interfere with the rights of the husband to use and enjoy the estate of the wife, except only so far as it was necessary to save that estate for her benefit, in case it became jeoparded through him. He was willing that the husband, as such, should be benefited by it as long as he could, but when he could not be, then he wanted it secured to her sole and separate use.

This intention, I think, is fairly gathered from the will. The testator, under the well settled rules of equity, could have made the life estate a sole and separate estate in his daughter, from the time of his death, and thereby have entirely cut off the marital rights of the husband in the same. Equity could protect such a devise against the creditors of the husband, and also the husband himself. It is also now settled that an estate over which a single woman would have the absolute control, while single, may be secured to her sole and separate use by the testator, against the control of any future husband.

The testator, having the whole power of disposition, so as to entirely prevent the husband from asserting any claim to the use or profits of the land, in right of his marriage, could, without violation of any rule of law, permit the husband to enjoy them up to a certain contingency, and then, by the creation of a separate estate, completely prevent him. Instead of giving to the wife a sole and separate estate from the tes-

Emery *v.* Van Syckel.

tator's death, he has only provided that such an estate shall commence for her, upon the contingency of her being dispossessed. The life estate devised to her, is subject to be limited upon her being dispossessed, and a different estate is then created.

The fifth clause of the will limits the legal estate first devised to the wife, and also the enjoyment of the husband therein, by the act of dispossession. The simple intention of the testator was not to interfere with the husband, but to let him exercise all his marital rights until the estate was in peril by a dispossession, and then he meant that those rights should end, and the estate be secured to her exclusively. It would seem as if he thought that by leaving the estate in the power of the husband, there might possibly be a dispossession of the wife, and that he did not mean, when that occurred, that she should be deprived of his bounty.

We can well understand how the testator may have preferred to let the son-in-law and daughter enjoy the homestead together, without any abridgment of the husband's rights, as long as they could; how he may have wished that the husband should take the profits, as the husband naturally would, and ordinarily ought, and use them in the support of himself and family, without the possibility of any disturbance of the harmony between himself and wife, by the creation of an exclusive property in the wife; and also how, as a prudent man, looking to the comfort and sure sustenance of his only child with her children, and fearing that possibly she would some day, by acts and circumstances beyond her control, be turned out of her home, he may have desired, in view of such a contingency, and upon its happening, to secure to her the income of the land, independent of her husband and his creditors. The devise under this will, in its whole scope, secures these objects. If the husband, either by his act of alienation, or through the action of creditors, caused his wife to be dispossessed, that would be the limit of any estate that he could have any right in. The dispossession of the wife from these premises, by any cause other than her own, fixed the limit of

3 B *

any estate liable to such dispossession. He expected the daughter to live upon the farm, if she wished; that is apparent from the whole tenor of the will; and the word dispossession is used in reference to the *farm*, and if she could not live on it, she should have the benefit of it, while off.

There can be no valid objection against such a devise as the testator has here made. The policy of the law, which prevents the absolute devise or bequest of property from being restrained by restrictions repugnant to the character of the estate, cannot be raised as an objection, for the testator has not endeavored here to create an absolute estate for life in the husband, with an attempt to restrict him in the power of disposal, which necessarily belongs to such an estate, but he gives to the wife an estate, which the husband can take by law, up to a certain time, depending on a contingency; and then his benefit in the devise ends. Neither is there any thing in the policy of the law, to prevent the limitation of such an estate as is here devised, upon a dispossession which may be occasioned by the act of alienation of the husband, or by his insolvency, or by his creditors *in invitum*. Such contingencies of limitation are now clearly recognized in cases of annuity, or other bequests.

The most recent English case upon that subject, is that of *Rochford* v. *Hackman*, 9 *Hare* 474, where the authorities are fully referred to. The case of *Bramhall* v. *Ferris*, 4 *Kernan* 41, is also a strong case upon the same point.

In 1 *Jarman on Wills*, 823, the author uses this language: "But though a testator is not allowed to vest in the object of his bounty, an unalienable interest exempt from the operation of bankruptcy; yet there is no principle of law which forbids his giving a life interest in real or personal property, with a proviso, making it to cease on such an event." I see no reason why the same principle, that is so well settled in reference to annuities and other bequests, should not equally apply to the limitation of the enjoyment of real estate by the husband under his marital rights, upon such a contingency.

This, then, is the character of the interest that the husband

took, liable to be defeated by the dispossession referred to in the will. The estate of the wife was a legal estate up to that time, attaching itself to the husband. Upon the happening of the contingency, a different estate began; a trust estate in the executors for the remainder of the life of the wife, to her sole and separate use. The language of the will is, " then I do order and direct my executors, or the survivor of them, to take charge of her estate, both real and personal, and rent out the land to the best advantage, *and pay over to her the rents and interest money, yearly, and every year, and her receipt, and hers only, shall be sufficient for the same.*"

If this was only a trust estate with the legal interest in the executors, for her use, without being a sole and separate use, it would be a trust that could not be reached by proceedings at law by creditors of the husband; their power to affect it to their benefit, would only be in the Court of Chancery, where the court could make a settlement upon the wife, and the creditors be benefited, subject to such settlement; but, if a trust to her sole and separate use, as it is, then the creditors of the husband could not reach it, even in the Court of Chancery. The separate estate of the wife, previous to the act of 1852, was purely a creature of a court of equity, and courts have gone far, and justly so, to aid in preserving estates for the wife and family, against the claims of the husband, or others through him. The general rule is, that no particular form of words is necessary to vest a separate estate in the wife, but the intention to give her such an interest in opposition to the legal rights of the husband, must be clear and unequivocal. If it be plain from the language of the instrument, or from all the circumstances disclosed in it, that the intention was to create a separate interest in the wife, this intention will be sustained and carried out. A direction in the will, incompatible with the existence of the rights of the husband, will exclude him.

The English and American cases upon this subject, are mostly collected in the notes to *Hulme* v. *Tenant,* 1 *White & Tudor's Lead. Cas. in Eq.* 401. The technical words to create

such an estate are " to her sole and separate use," but are not necessary to be used.

In the case of *Lee* v. *Prieaux*, 3 *Brown C. C.* 381, the words, " their receipts in writing, respectively, shall be a sufficient discharge to my said trustee for the sum, or sums, so to be paid, &c.," were construed, that the wife should have the power to give a discharge, so as to bar the husband.

·In *Dixon* v. *Olnies*, 2 *Cox* 413, the words were : " I devise and direct that the said bonds and mortgages be delivered up to my said niece, Lady Waltham, whenever she shall demand, or require the same." The Lord Chancellor said, " as these securities were to be given to Lady Waltham, on her demand, Lord Waltham could not have obtained them from the executors, without a demand made by Lady Waltham, which gave her the dominion over them, and they must therefore be considered as given to her separate use."

In *Wagstaff* v. *Smith*, 9 *Ves.* 520, the words " independent of her husband, or any future husband she may hereafter marry," and in *Pritchard* v. *Ames*, 1 *Turn. & R.* 222, the words " for her own use, and at her own disposal," were held to vest a separate estate.

In the case of *Stanton* v. *Hall*, 2 *Russ. & M.* 175, Lord Chancellor Brougham uses this language: " It was clear that no particular form of words was necessary in order to vest property in a married woman to her separate use. That intention, although not expressed in terms, might still be inferred from the nature of the provisions annexed to the gift; as where, for example, the direction was that the property should be at the wife's own disposal, or that her receipts should be a good discharge; circumstances which raised a manifest implication that the marital right was meant to be excluded." And in the case of *Tyler* v. *Lake, Ibid.* 183, he says that the marital rights of the husband will be excluded where " the donor annexes some direction or condition to the gift, in a manner incompatible with the existence of the husband's right. Of this nature are the phrases 'to be at the wife's own disposal,' or 'to be enjoyed independent of the husband,' or

'her receipt to be a good discharge.'" The will or convey-ance in these two cases, did not contain sufficient to raise a separate estate. Yet the court approved the doctrine as stated.

These expressions of the Lord Chancellor are founded in authority, and no well considered case holds that he has gone too far. In the case of *Blacklow* v. *Laws*, 2 *Hare* 40, the Vice Chancellor evidently thought that the Lord Chancel-lor's application of the rule to the particular words of the will or conveyance, was not sufficiently liberal; that the marital right was protected by a too strict construction; yet he felt obliged to follow the doctrine of those cases.

The words nearest analogous to those in this will, are in the case of *Lee* v. *Prieaux*, 3 *Brown* C. C. 311; "their re-ceipts in writing, respectively, shall be a sufficient discharge." This decision was made in 1791, and its authority has not been shaken by any subsequent case. At the common law, the husband could take the legacy or trust, and receipt for it, and his receipt alone was necessary. The implication from the power given to her to discharge, was that she should bar her husband. The testator, in the case before us, directs that "her receipt, and *hers only*, shall be sufficient for the same." He intended that the trustees should, in no event, pay the rents to the husband; her receipt was their only discharge. Language could hardly be stronger, short of an express declaration showing that the husband was to be ex-cluded from any rights in, or to them. The fact that the testator has created a trust after the dispossession, has also considerable meaning. It is a part of the very means pro-vided to make the estate in the wife, different from what it was before the contingency.

In ordinary cases, the fact of an express trust would not have much bearing upon the character of the estate, for there can be a trust for the wife, to which the rights of the hus-band would attach; but when he permits the husband to enjoy till dispossession, and then changes the interest of the wife into a trust, it is some evidence that he did not intend

any risks to the estate after that, by any right of the husband. It is very clear to my mind, that the interest of the wife, guarded in the fifth clause of the will, is a sole and separate trust estate, peculiarly an object of the care and protection of a court of equity.

It has been suggested, that under this will the executors took the legal estate, as trustees, from the death of the testator.

Such a conclusion would prevent a court of law from disturbing it, and the relief prayed for in this bill would necessarily follow. But I am unable to discover from the will, any satisfactory evidence that the testator so intended. A legal estate in a trustee, may arise by necessary implication, and where the purposes of the will require it; but in this case, until dispossession, the language of this will is not sufficiently strong to require the legal estate to be in the trustees. It is certainly not given to them in express terms, and there is no duty required of them that makes it necessary for them to have it.

The annuity of $60 to the widow, is only a charge upon the real estate. It is first provided for, by directing the executors to place out at interest $1000 to raise it. Whether there was sufficient personal estate for that, does not appear. If there was, it was their duty first, to look to that; but if not, the real estate is only a security for it. And so the making of the real estate liable to pay the board and lodging of the widow, if she should give up her part of the house, creates only a charge upon it. It is true, that the will directs the annuity to be paid by the executors, also the board and lodging, yet these duties do not require, in any way, the legal title for their performance. The executors would be trustees of the fund or moneys necessary to make these payments, and would have power under the will, to raise, through the Court of Chancery, out of the real estate, such fund or money. No power of sale, or appropriation of the yearly proceeds of the land, to that end, is given to the executors by the will. The provision of $24 a year to the black girl,

Phillis, is also of the same character, and is only a charge upon the real estate. The legacy to George Servis Emery, is not directed to be paid by the executors, but it is made a charge also upon the real estate. It is given upon the contingency of his arriving at the age of twenty-one years, and and if he should die before, and without lawful issue, it becomes a part of the residue of the estate.

It does not appear to me to be necessary that George should collect this legacy through the executors; but if so, it is only a charge of the amount to be made under the decree of chancery, out of the real estate. The executors being trustees to that end alone, and of the fund when raised, to pay it to George. The direction in the will for "the executors to have the farm and buildings kept in good repair, and to see that no unnecessary waste or destruction of timber be committed on my said farm, or wood lot adjoining, and to carry this my last will and testament into effect, according to the true intent and meaning thereof," could not, by any fair or necessary implication, vest in the executors any legal estate as trustees. When the trust estate commences upon dispossession, they then would have a legal estate for the benefit of the wife during the continuance of her interest, but before that occurs, this clause merely gives them a power to make those in possession perform that duty. A tenant for life would be required by law to keep the farm and buildings in repair against permissive waste, and he could also be prevented from committing any unnecessary waste or destruction of timber. These were the objects intended, it appears to me, to be secured by that clause, and a power is given to the executors, as such, to see that they are carried out, and, if necessary, to compel it. No direction is given as to whether wood and timber shall be cut for that end, or any part of the land shall be sold, or whether the proceeds of the land shall bear the burden. This clause gives the executors a power which would enable them, for the benefit of those in remainder, to obtain the aid of a court to preserve the inheritance for them. Perhaps the executors would be justified

without the aid of a court, in having wood or timber cut to repair the buildings or fences. But whether that is so or not, it is not necessary to the full exercise of the power conferred in that clause, that any legal title should be in the executors. Such a view would be inconsistent with what appears to me to be the design of the testator, to secure the legal rights of the wife, and, consequently, those of the husband, undisturbed, until the happening of the contingency, which then creates a legal title in them, in trust for the wife. The language of the fifth clause, which directs the executors, or the survivor, when that contingency happens, "to take charge of her estate, and rent out the land," seems to be inconsistent with any legal title being in them as trustees before.

The trust, as a legal estate in the executors, lasts during the life of the wife, from the dispossession, and at her death ends; and if the husband survives, and the youngest child has not attained the age of twenty-one years, he takes "*the use, occupation, and profits*" till that occurs, giving him a legal estate during that period.

The only question remaining is, as to the relief prayed in the bill.

By the deed from the sheriff, the defendant, Van Syckel, acquired all the right, title, interest, and estate of Nicholas Emery, in and to the lands devised. Technically, the deed would carry with it the right in the purchaser, to the immediate possession, but the very instant such possession was transferred, the right of the executors as trustees, would accrue. The act of dispossession, and the commencement of the trust estate, would be instantaneous. At law, the result would be this: the purchaser would recover possession, and the trustees would be compelled to submit to the delay of a suit in ejectment, to recover the possession to them as trustees. This would be compelling the interest of the wife to bear an unnecessary burden in costs, and also to be prejudiced by the delays and incidents of a suit at law, which should be avoided, unless some substantial right of the purchaser was defeated by preventing it.

It may be said that the purchaser should be allowed to recover his judgment, in order for him to have a remedy for mesne profits from the date of his deed; but if he was permitted to recover those, it would be upon the idea that he was entitled to the possession from the date of the deed, and that the husband was a trespasser upon his rights of possession. This claim is inconsistent with any rights of the wife in the enjoyment of the estate during that time, and she would be virtually dispossessed, for whenever the rights of the husband cannot be exercised, without a dispossession of the wife, then the trust would in equity begin. If the purchaser had got into possession of the land at the date of his deed, he would have been decreed to account for the profits for her benefit. He could not get any benefit under his deed, either in the actual possession, or in the mesne profits after the date of the deed, that would not be founded upon a right to the exclusive possession of the land, both as against the husband and the wife. Whenever the estate of the husband was conveyed away by the sheriff, he had no further right to the possession as husband, and it was his duty instantly, as a trustee, to look out for the interests of the wife. Without the aid of a court of equity, he may have gone through the circuity of delivering possession, as husband, to the purchaser, and then, as trustee, recovering it back. Any holding on of possession after the deed, if not as trustee, was as a wrong doer, and without any right. The wife's interest, if not protected in the trust, would be merged in the possession of the husband, and, as a wrong doer, he would be liable to respond for the damages to the purchaser. This could not be, except upon the idea of a right of possession in the purchaser, and a dispossession of the husband and wife, as effectually as if the purchaser was in actual possession under the deed. Nicholas Emery, being both husband and executor, and a circuity of legal proceeding having only a tendency to injure and prejudice the separate estate of the wife, and the object being only to get the possession into the trustees at last, and

Emery v. Van Syckel.

one being now in possession, and the only one who took out letters testamentary, equity will hold that the dispossession occurred at the delivery of the deed to Van Syckel, upon the principle, that that will be considered as done that ought to have been done, for it was the duty of Emery then to deliver the possession according to the deed; and upon the same principle, it will hold that the possession, of which the husband ought then to have been deprived, was delivered over by Van Syckel to the trustees, for, when he received possession, it was his instant duty to deliver it over to the trustees.

Under the very peculiar circumstances of this case, Emery will be considered in possession as trustee from the delivery of the deed. The contingency then, within the contemplation of the will, happened, and the trust estate for the sole and separate use of the wife began. Henceforward, during her life, she has such an estate. It being the duty of the Court of Chancery to protect it, the complainant is entitled to have the suit in ejectment enjoined, and the relief as prayed for in the bill. The decree should be reversed.

The decree was reversed by the following vote :

*For reversal*—BEASLEY, C. J., BEDLE, DEPUE, CLEMENT, FORT, KENNEDY, VREDENBURGH, WALES, WOOD.   9.

*For affirmance*—NONE.